1 | Linda Miller Savitt, SBN 94164
*lsavitt@brgslaw.com*
2 | Jeffrey P. Fuchsman, SBN 105651
*jfuchsman@brgslaw.com*
3 | BALLARD ROSENBERG
   GOLPER & SAVITT LLP
4 | 10 Universal City Plaza, Sixteenth Floor
Universal City, California  91608-1097
5 | Telephone:   (818) 508-3700
Facsimile:    (818) 506-4827
6 |
7 | Nicholas L. DiVita, MO Bar No. 37514
*ndivita@bowse-law.com*
Jocelyn A. Villanueva, MO Bar No. 43448
8 | *jvillanueva@bowse-law.com*
BERKOWITZ OLIVER WILLIAMS
9 |    SHAW & EISENBRANDT LLP
2600 Grand Boulevard, Suite 1200
10 | Kansas City, Missouri  64108
Telephone:   (816) 561-7007
11 | Facsimile:    (816) 561-1888
12 | Attorneys for Defendants
H&R BLOCK MORTGAGE CORPORATION and
13 | OPTION ONE MORTGAGE CORPORATION

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MELISSA SCHUELER, et al., | CASE NO. SACV07-342 CJC (MLGx) |
| Plaintiffs, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| vs. | |
| H&R BLOCK MORTGAGE CORPORATION, et al., | Date:   June 1, 2009 |
| Defendants. | Time:   1:30 P.M.
Courtroom: 9B
Hon. Cormac J. Carney |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................iv

I.  INTRODUCTION ......................................................................................1

II.  BACKGROUND .......................................................................................3

    A.  Procedural Posture/Claims At Issue.....................................................3

    B.  Plaintiffs' Rule 23 Record...................................................................4

        1.  Plaintiffs' Record Is Devoid Of Any True Common Proof To Support Their Motion..................................................5

        2.  Plaintiffs Cannot Elude The Time Entry Data, Which Shows That Reporting Overtime Was Individualized...............6

        3.  Plaintiffs Fail To Challenge Stated Policies, And Their Testimony Only Confirms Individualized Situations................6

    C.  The Unaddressed Severance Agreements ............................................8

III.  ARGUMENT.............................................................................................9

    A.  Rule 23(a).............................................................................................9

        1.  Numerosity, Commonality, Typicality, Adequacy....................9

            a.  Plaintiffs Have Not Shown True Commonality ..............9

            b.  The Severance Agreements Defeat Typicality and Adequacy ......................................................................11

    B.  Rule 23(b)(3); "Predominance" And "Superiority"...........................12

        1.  Plaintiffs Fail to Establish Predominance For Any Count .......12

            a.  Plaintiffs' Claims for "Off-the-Clock" Overtime..........13

                (1)  The Record In This Case – Including Plaintiffs' Own Submissions and Testimony – Shows That Substantial Individual Inquiry Is Required ........................................................13

(2)    Plaintiffs' Allegations on Production Goals Do Not Establish Predominance ........................16

(3)    The Cases Cited by Plaintiffs are Inapposite .......17

b.    Plaintiffs' Claims for Allegedly Missed Meal Breaks ........................................................................17

(1)    The Only Common Proof Available Shows Loan Officers Took Meal Breaks........................17

(2)    Recent Case Law Underscores that Individual Issues Predominate on the Meal Break Claim ........................................................19

c.    Plaintiffs Fail Even To Address Their Wage Statement, UCL and Penalty Claims..............................21

(1)    Wage Statement and UCL....................................21

(2)    Waiting Time Penalties Under §203....................22

2.    Plaintiffs' Failure to Establish Superiority And Other Issues under Rule 23(b)(3).........................................................23

a.    Plaintiffs Can File Individual Claims.............................23

b.    No Class-wide Damages Model ....................................23

D.    Class Definition Defects ....................................................25

IV.    CONCLUSION ...........................................................................26

1

# <u>TABLE OF AUTHORITIES</u>

2

3                                                                                              <u>Page</u>

**Cases**

4

5   *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare*
      *Group L.P.*, 247 F.R.D. 156 (C.D. Cal. 2007)..................................................12, 24

6   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231,
7      138 L. Ed. 2d 689 (1997) ...............................................................................10, 12

   *Baas v. Dollar Tree Stores, Inc.*, 2008 WL 5273724 (N.D. Cal. 2008)..................14
8
   *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592 (E.D. La. 2002)...................15
9
   *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003)................................24
10
   *Bernard v. Gulf Oil Corp.*, 841 F.2d 547 (5th Cir. 1988) ......................................11
11
   *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007)..............12, 22
12
   *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008)............17
13
   *Bradley v. Networkers Int'l LLC*, Not Reported in
14      Cal. Rptr. 3d, 2009 WL 265531 (Cal. App. 2009)...............................................19

15   *Brinker Rest. Corp. v. Superior Court*, 80 Cal. Rptr. 3d 781,
      2008 WL 2806613 (Cal. Ct. App. July 22, 2008)................................................19

16   *Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) ...............12, 20

17   *Bublitz v. E.I. DuPont De Nemours & Co.*, 202 F.R.D. 251 (S.D. Iowa 2001) ......11

18   *Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545,
      61 L. Ed. 2d 176 (1979). ......................................................................................9

19   *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586
20      (E.D. Cal. 2008) ...................................................................................................19

21   *Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705 (N.D. Cal. 2008) ........13, 15, 16

22   *Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ...........................19

   *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796,
23      90 Cal. Rptr. 3d 175 (2009)..................................................................................11

24
                                                                      -iv-

25

*Edwards v. McCormick,* 196 F.R.D. 487 (S.D. Ohio 2000).....................................25

*Espinoza v. Domino's Pizza, LLC,* No. EDVJ 07-1601-VAP, Order Granting
    Motion for Class Certification (C.D. Cal. Feb. 18, 2009)....................................19

*Forrand v. Federal Express Corp.*, 2009 WL 648966 (C.D. Cal. 2009) ....19, 20, 21

*Garcia v. Tyson Foods, Inc.,* 2009 WL 352603 (D. Kan. 2009)...........................17

*Gartin v. S & M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) .............................13

*Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 102 S. Ct. 2364,
    72 L. Ed. 2d 750 (1982) ......................................................................................1

*Goldsby v. Adecco, Inc.*, 2009 WL 262216 (N.D. Cal. 2009)....................18, 19, 20

*In re Rhone Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995)..............................25

*Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006) ...........13, 15, 25

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) ......................18, 19, 21

*Kimoto v. McDonald's Corps.,* 2008 WL 4690536 (C.D. Cal. 2008)....................19

*Koike v. Starbucks Corp.*, Case No. 3:06-CV-3215, Order Granting
    Defendants Motion for Summary Judgment and Denying Plaintiffs'
    Motion for Class Certification (N.D. Cal. June 20, 2008).............13, 14, 15, 16

*Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465,
    (C.D. Cal. 2006) ................................................................................................23

*Lienhart v. Dryvit Sys., Inc.* 255 F.3d 138 (4th Cir. 2001)....................................10

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148,
    71 L. Ed. 2d 265 (1982) ....................................................................................25

*Maddock v. KB Homes, Inc.*, 248 F.R.D. 229 (C.D. Cal. 2007)............................24

*Melong v. Micronesian Claims Comm'n*, 643 F.2d 10 (D.C. Cir. 1980) ...............11

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)....................................................25

*Neal v. Dir., D.C. Dep't of Corps.*, 1995 WL 517246 (D.D.C. 1995) ...................24

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815,  119 S. Ct. 2295,
    144 L. Ed. 2d 715 (1999) ..................................................................................25

*Perez v. Uline, Inc.,* 157 Cal. App. 4th 953, 68 Cal. Rptr. 872 (2007) ...................11

*Reynov v. ADP Claims Servs. Group, Inc.*, 2007 WL 5307977
    (N.D. Cal. 2007). ..................................................................................11

*Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.*,
    102 Cal. App. 4th 765, 125 Cal. Rptr. 2d 804 (2002)..........................22

*Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668 (9th Cir. 1975) .................9

*Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008) ..................19

*Smith v. T-Mobile USA, Inc.*, 2007 WL 2385131 (C.D. Cal. 2007)......................15

*Southwestern Refining Co., Inc. v. Bernal*, 22 S.W.3d 425 (Tex. 2000)................24

*Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1271 (N.D. Ohio 1986) ...................11

*Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. 2006) .........17

*United Air Lines, Inc. v. Wiener*, 286 F.2d 302 (9th Cir. 1961)..............................25

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .................... 9, 25

*Villafuerte v. Inter-Con Security Sys., Inc.*, 96 Cal. App. 4th 45,
    117 Cal. Rptr. 2d 916 (2002)................................................................22

*Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179 (3d Cir. 2006)...........................25

*White v. Starbucks Corp.*, 497 F. Supp. 2d 1080 (N.D. Cal. 2007) .......................19

**Statutes**

28 U.S.C. § 2072(b) ...............................................................................................25

Cal. Bus. & Prof. Code § 17204 ............................................................................22

Cal. Bus. & Prof. Code § 17200 ...................................................................3, 21, 22

Cal. Labor Code § 202(a) .......................................................................................22

Cal. Labor Code § 203..........................................................................................4, 22

Cal. Labor Code § 226(a) and (e) ............................................................................3

Cal. Labor Code § 226.7.....................................................................................3, 17

Cal. Labor Code § 510 .............................................................................................3

Cal. Labor Code § 512.............................................................................................17

**Rules**

Federal Rule of Civ. Proc. 23 ...........................................................*passim*

**Treatises**

7AA Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 3d
   § 1785 (Supp. 2002). ...........................................................................2, 4

# I.    INTRODUCTION

Pending is Plaintiffs' motion for class certification of their California claims pursuant to Rule 23. (Docket Nos. ("Doc.") 151 and 158; the "Motion"). "Rigorous analysis" of the law and record, as mandated by Rule 23,[1] requires that Plaintiffs' Motion be denied.   Indeed, ***any*** meaningful analysis compels this conclusion, because Plaintiffs' claims present individualized and varied questions of law and fact that cannot appropriately, efficiently or fairly be dealt with on a class-wide basis.   As such, the Rule 23(a) and (b) standards, which test the propriety of class treatment and are mandatory prerequisites to class certification, are not satisfied in this case.

With respect to Rule 23(a), for example, Plaintiffs must prove that four requirements are met: commonality, typicality, adequacy and numerosity.  Yet, the first three of these four threshold requirements are conclusively disproved by (among other things) the fact that 166 of the proposed class members entered into severance agreements whereby they released their California claims, whereas the named Plaintiffs did not.  This fact alone – entirely ignored by Plaintiffs' Motion – precludes class certification and defeats any finding of commonality, adequacy or typicality.   Indeed, these agreements necessarily divide the class, infuse the proposed class with *un*common issues and render the named Plaintiffs *a*typical and *in*adequate to represent the putative class.  Thus, and for the additional reasons set forth below, Rule 23(a) is not satisfied and certification should be denied.

Likewise, Plaintiffs have not established and cannot establish the

---

[1] *See, e.g., Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 750 (1982).

-1-

predominance and superiority requirements of Rule 23(b)(3).    Among other deficiencies, Plaintiffs do not identify any "common proof"[2] that could be used to determine liability and damages on a class-wide basis.  To the contrary, Plaintiffs *disavow* the two principal sources of potential class-wide common proof available: PeopleSoft time entry records, which the putative class members themselves entered to track the hours they worked, and the Company's stated policies, which among other things required the potential class members to record their time accurately and entitled them to meal breaks.   This evidence fundamentally undermines the merits of Plaintiffs' claims (for example, it shows that contrary to Plaintiffs' meal break claim, loan officers reported meal breaks in 98% of meal eligible shifts) and also evidences that the would-be class is permeated by highly-individualized issues that preclude certification (for example, it reflects substantial variation in the overtime reported by loan officers).

Having rejected the available common proof, Plaintiffs fall back upon anecdotal, personal accounts from the named Plaintiffs and would-be class members.  Plaintiffs' reliance on such testimony, however, is misplaced.  Indeed, the record, including admissions and divergent testimony from the named Plaintiffs themselves, shows that individual issues predominate in this case.  Moreover, since Plaintiffs' own testimony concedes that overtime *was* recorded and meal breaks *were* offered and taken, depending on the time in question, the sales manager involved and other differing circumstances, they cannot satisfy their burden to prove that a representational action is appropriate. That is, Plaintiffs cannot show

---

[2] *See, e.g.,* 7AA Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 3d § 1785 (Supp. 2002).

-2-

that proof of liability or damages for one Plaintiff establishes proof of liability or damages for the others.

Furthermore, Plaintiffs have failed to carry *their* burden to show that a class action is superior to traditional means of adjudication or that this case can be properly and fairly managed as a class action.   Plaintiffs offer no class-wide damage model or specific measures by which this case may be realistically and fairly tried.  Plaintiffs bear the burden to satisfy the Rule 23 requirements *now* and cannot do so by suggesting that problems with certification be ignored and dealt with at some future date. Plaintiffs' approach is contrary to law and contravenes the rigorous analysis required under Rule 23.

## II.     BACKGROUND

### A.     Procedural Posture/Claims At Issue

Plaintiffs filed this putative class action on March 23, 2007.   The First Amended Complaint ("FAC") (Doc. 80) makes five separate claims. Count I claims violations of the Fair Labor Standards Act ("FLSA") for allegedly unpaid "off the clock" ("OTC") overtime work.  (*See* Defendants' Motion to Decertify the FLSA Claims at Doc. 146, 156)  The remaining four counts – II through V – assert state law claims: Count II (mirroring Count I's FLSA claim) seeks allegedly unpaid OTC overtime under Cal. Labor Code § 510; Count III is a claim for alleged failure to "provide" meal breaks under Cal. Labor Code § 226.7; Count IV seeks "penalties" for the alleged "knowing and intentional" failure to provide accurate, itemized wage statements under Cal. Labor Code § 226(a) and (e); and Count V is a derivative claim under Cal. Business and Professions Code § 17200 ("UCL") for "unfair trade practices."

-3-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; CASE NO. SACV07-342 CJC (MLGx)

Although the FAC sets out these discrete claims, the Motion purports to seek class treatment for claims not expressed as stand-alone causes of action, *e.g.*, a purported claim under Cal. Labor Code § 203 for "waiting time penalties." This deviation from the FAC is not explained by the Motion. Moreover, the issues caused by such discrepancies are exacerbated because the Motion does not systematically analyze each of the claims for which class certification is sought. For instance, whereas class certification of § 203 claims is requested nominally (*see* Doc. 151-2 at 1), and such claims are identified and relied upon as a "common question of law" (*id.* at 15), the Motion does not include any analysis whatsoever of whether or how the Rule 23(a) and (b) factors might apply to such a claim.

This omission is a basic legal defect and is fatal to the certification request for the § 203 claim. Far from being an isolated problem, however, the treatment of the § 203 claim adverts to Plaintiffs' fundamental failure to conduct the rigorous analysis required under Rule 23. As the moving parties, Plaintiffs were required to prove that all of the Rule 23(a) and 23(b)(3) requirements are met for every claim asserted. As explained herein, they have not done this and, in fact, cannot do so on the record in this case.

**B.    Plaintiffs' Rule 23 Record**

In order to analyze the certification issue, the court must consider, "what will have to be proved at trial and thus whether those matters can be presented by common proof or whether individual proof will be required." *See* 7AA Wright, Miller & Kane, Fed. Prac. & Proc. Civ. 3d § 1785 (Supp. 2002). Here, Plaintiffs have not tendered any legitimate form of "common proof" of liability or damages,

and the evidence belies the existence of any such proof to support Plaintiffs' proposed class case.

### 1. Plaintiffs' Record Is Devoid Of Any True Common Proof To Support Their Motion

Ordinarily, common proof in a class action would take the form, as an example, of electronic data applying to the putative class as a whole, or some form of statistical analysis of such data.  However, Plaintiffs offer no such class-wide evidence.  Instead, Plaintiffs *disavow* the principal sources of electronic data in the case (*see infra* at 6) and have been precluded from presenting any expert witness materials in support of their request for class certification.  (Doc. 145)

Lacking such evidence, Plaintiffs attempt to create the appearance of commonality across individual claims by the Kan Declaration (Doc. 152):  a declaration by Plaintiffs' counsel that purports to summarize 49 rote declarations of Plaintiffs and putative class members (Doc. 153).  The Kan Declaration presents ostensibly relevant portions of these 49 counsel-drafted declarations in the form of "indices" – created by class counsel – that superficially categorize the allegations into groupings favorable for the Plaintiffs.   (Doc. 152 at ¶ 15)[3]  Distillations by Plaintiffs' counsel of self-serving written statements from 6.5% of the putative class are not a proxy for common proof for a putative class of 750.   The unavoidable fact for Plaintiffs is that *there is no common proof of liability or damages in this case*.   Plaintiffs' effort to fashion such proof from a pool of formulaic declarations cannot remedy this fundamental defect.   Rather, as

---

[3] Exhibits 16 through 35, for example, to the Kan Declaration, Doc. 152 ¶ 15, reflect "charts" that class counsel says "accurately index" multiple conclusory assertions, including that managers instructed loan officers not to report overtime in their records (Exhibit 27).

discussed herein, even assuming for the sake of argument that anecdotal evidence could in some particular instances be used as common proof, *here*, the record reflects significant variations between and among the alleged and evidenced experiences of the putative class members.  As such, their amalgam of declarations is no substitute for the common proof needed to support 23(b)(3) certification.

### 2.    Plaintiffs Cannot Elude The Time Entry Data, Which Shows That Reporting Overtime Was Individualized

As referenced above, Plaintiffs disavow the computerized PeopleSoft time entry data that was recorded by the putative class members themselves to contemporaneously report the hours they worked.  (*See* Doc. 147 at 7-9)  Indeed, Plaintiffs' case rests on the very notion that such time entry data is categorically unreliable, because it neither supports the merits of their case nor their request for certification.   Still, having rejected this data as their common proof, Plaintiffs cannot negate its existence. Indeed, the uncontroverted expert analysis of the PeopleSoft time entry data shows that there was significant variation in the reporting of overtime (both across sales managers and offices) and in the number of overtime hours reported by the putative class.  (*See* Doc. 147 at 9, 16; Doc. 148-16 (Ward Decl.))   This analysis of the PeopleSoft data thus evidences the individualized and variable nature of overtime reporting, across the putative class.

### 3.    Plaintiffs Fail To Challenge Stated Policies, And Their Testimony Only Confirms Individualized Situations

Similarly, although Plaintiffs purport to challenge the implementation of Defendants' policies and practices, they do not and cannot show that Defendants' company-wide, written policies on overtime and meal breaks were improper.  The

-6-

policies, in fact, were not improper, and undermine Plaintiffs' claims on their merits.  For example, the company's official meal break policy "entitles" loan officers to a meal break of 30-60 minutes.[4]  (Associate Handbook, App. at 118; *see also* Defendants' Motion to Decertify the FLSA Claims, Doc. 147 at 5-9, discussing Defendants' overtime, time recording and other pertinent policies).[5]  Nor do (or can) Plaintiffs contest that the policies required *them* to accurately record their time in the PeopleSoft system and bestowed *them* with autonomy to set their own work schedules.  (*See id.*)  Instead, Plaintiffs claim that Defendants' actions *varied* from these written policies (*e.g.*, Plaintiffs allegedly were "forced" to underreport time).  However, Plaintiffs' own testimony belies any claim of consistency or commonality in these supposed variations from stated policies.

For instance, while some Plaintiffs testified that they were not permitted meal breaks, others testified that they were allowed breaks, and still others testified that they could have taken meal breaks but feared unknown repercussions for doing so.  (*See infra* at 19-20)  Indeed, in Plaintiff Schueler's deposition, she gave up her personal meal break claim in its entirety, conceding that she knew she was allowed to take meal breaks and did so unless she *chose* not to take a break.  (Schueler 188:24-190:24, 192:14-25; App. II at 28-29)  Similarly, with respect to overtime, Plaintiffs' testimony and the evidence generated by them varied substantially: in depositions, some testified that overtime was required to achieve

---

[4] Sales manager Chad Sathoff testified that he believed loan officers should get a meal break every 5 or 6 hours (Sathoff 37:17-38:2; App. II at 6) and could do whatever they wanted during a meal break. (*Id.* 39:6-10; App. II at 6)

[5] A second Appendix of Exhibits ("App. II") containing additional material is filed herewith.  A first Appendix of Exhibits ("App.") was filed with Defendants' Motion to Decertify Conditional FLSA class (Doc. 148).

1    production goals, others conceded this was not so; and the PeopleSoft data

2    recorded contemporaneously by Plaintiffs – as discussed above – disproved any

3    common pattern. (*See* Doc. 147 at 11-12, 19)

4         The eleven new declarations tendered by Plaintiffs with their Motion further

5    illustrate the inconsistencies across the proposed class. With respect to this pool

6    (selected by Plaintiffs), three of the eleven new declarants reported no overtime,

7    and the remaining eight reported overtime sporadically, with different frequencies

8    and amounts reported from year to year, office to office, and sales manager to sales

9    manager. Declarant Gronsky, for example, was employed by Defendants for eight

10   months in 2003, and *reported overtime during 12 of those 16 pay periods*.[6] These

11   differing circumstances in reporting overtime demonstrate some of the types of

12   fundamentally discrepant – and individual – issues and facts that predominate in

13   this case and preclude class certification.

    **C.**    **The Unaddressed Severance Agreements**

14        As mentioned above, Plaintiffs omit any mention of the fact that 166 loan

15   officers in the putative class (and 51 of the FLSA opt-ins) accepted severance

16   checks and signed severance agreements. (*See* Doc. 147 at 22) Each of these

17   agreements contained a general release and a confirmation of receipt of wages

18   owed. (Fox Decl. ¶ 8 and its Ex. 1 at 2, 4-5; App. at 13-15, 21, 23-24) Plaintiffs'

19   disregard of this issue is telling: the severance agreements divide the putative class,

20

21   ――――――――――――
  [6]  Doc. 153-5; Villanueva Decl. ¶ 4, Ex. 2; App. II at 2, 7-10. Further examples are

22   Barrios, who reported overtime in 4 pay periods in 2005 and 2 pay periods in 2006,
  and Koenig, who reported overtime in 6 pay periods in 2004, 1 pay period in 2005,

23   14 pay periods in 2006 and 1 pay period in 2007. (Villanueva Decl. ¶¶ 5-6, Exs. 3,
  4; App. II at 11-25) Barrios and Koenig worked at different offices. (Barrios
  Decl. ¶ 1 (Doc. 153-3); Koenig Decl. ¶ 1 (Doc. 153-6))

24

25

permeate it with individual issues, and render the named Plaintiffs – none of whom signed agreements – inadequate as proposed class representatives.  Certification is, thus, precluded.

## III.    ARGUMENT

 "[T]he Rule 23 class-action device was designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700-01, 99 S. Ct. 2545, 2557, 61 L. Ed. 2d 176 (1979).  The trial court must conduct a "*rigorous analysis*" to determine whether the party seeking certification has met all of the Rule 23 prerequisites.  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1233-34 (9th Cir. 1996).  The party seeking certification must satisfy all requirements of Rule 23(a) and one requirement of Rule 23(b).  *Id*.; *Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975).  Plaintiffs proceed *only* under the provisions of FRCP 23(b)(3).  (Doc. 151-2 at 19)

As discussed in turn below, Plaintiffs have not met their burden under either 23(a) *or* 23(b)(3), and the record does not permit them to do so.  Further, their proposed class definition fails under 23(c)(1)(B).  Accordingly, their Motion fails.

### A.    Rule 23(a)

#### 1.    Numerosity, Commonality, Typicality, Adequacy

##### a.    Plaintiffs Have Not Shown True Commonality

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.   Rule 23(a).   Where, as here, certification is sought under Rule 23(b)(3), the 23(a) analysis is often treated as, at least in part, "subsumed" by the Rule 23(b)(3) predominance inquiry.   *See, e.g., Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 609, 117 S. Ct. 2231, 2243, 138 L. Ed. 2d 689 (1997); *Lienhart v. Dryvit Sys., Inc.* 255 F.3d 138, 147 n.4 (4th Cir. 2001).   In this case, however, in addition to the fatal deficiencies discussed in Defendants' Rule 23(b) analysis below (*see infra* at 12-25), Plaintiffs fail even to make the threshold showings required by Rule 23(a).

First, Plaintiffs' attempt to satisfy the "commonality" requirement under Rule 23(a)(2) is fundamentally flawed.   It essentially consists of a rote recitation of abstract allegations preceded by the word "whether."   (Doc. 151-2 at 15)   Such superficial treatment of the commonality requirement, if accepted (which it should not be), would drain the requirement of any practical meaning.

Moreover, as the discussion of the record in this case shows, deficiencies abound in Plaintiffs' effort to construct commonality where there is none.   To take two by way of example:   Plaintiffs do not even mention as a common question the existence or impact of the severance agreements signed by 166 putative class members, yet as discussed further in the following section, this is a core issue in the case and defeats certification.   (*See* Doc. 130)   Likewise, Plaintiffs have no intention of using PeopleSoft time entry data to establish liability or damages in this case, yet one of the alleged "factual commonalities" is that all loan officers were required to use "the same PeopleSoft time management system."   (Doc. 151-2 at 14)   Plaintiffs have created the appearance, but not the reality, of common questions.   As such, true commonality has not been established.

b.     **The Severance Agreements Defeat Typicality and Adequacy**

Plaintiffs' Motion additionally fails because they cannot satisfy the typicality and adequacy requirements of Rule 23(a).  Plaintiffs state they "have no interest contrary to those of the class." (Doc. 151-2 at 18)  Plaintiffs' claim, however, is incorrect.  While 166 of the proposed class members signed severance agreements and are subject to the argument that they released or waived their claims,[7] *none* of the named Plaintiffs executed such a severance agreement.  This renders the named Plaintiffs *a*typical and *in*adequate as a matter of fact and law.  The cases so hold.[8]

The rationale for this rule is clear.  The severance agreements create an immediate and fundamental intra-class conflict, defeating typicality and adequacy for the named Plaintiffs.  The legal interests of 166 loan officers who did sign severance agreements cannot be well represented by the named Plaintiffs (Schueler, Figueroa and Karalis) who did not.[9]  Furthermore, the problem becomes one of antagonistic intra-class divisions if, for example, rescission of the severance agreements is sought on some common law ground (*e.g.*, mistake or duress) for

---

[7] California courts have upheld similar releases or waivers.  *See, e.g., Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 803, 90 Cal. Rptr. 3d 175, 180 (2009) (affirming trial court ruling that settlement agreements containing general releases barred plaintiffs from proceeding with class action for unpaid overtime wages); *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959, 68 Cal. Rptr. 872, 876 (2007); *Reynov v. ADP Claims Servs. Group, Inc.*, 2007 WL 5307977, at *2 (N.D. Cal. 2007).

[8] *Thonen v. McNeil-Akron, Inc.*, 661 F. Supp. 1271, 1274 (N.D. Ohio 1986); *Bublitz v. E.I. DuPont De Nemours & Co.*, 202 F.R.D. 251, 257-58 (S.D. Iowa 2001).   Class representatives who did not sign releases "have no incentive to vigorously litigate the invalidity of those releases."  *Id.* at 258; *accord Melong v. Micronesian Claims Comm'n*, 643 F.2d 10, 15-16 (D.C. Cir. 1980).

[9] Indeed, some courts have held that individuals who did not sign releases lack Article III standing to assert claims on a class-wide basis on behalf of those who signed releases.  *See, e.g., Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550-51 (5th Cir. 1988).

-11-

which restoring consideration becomes necessary.[10]

This is not a hypothetical problem.  The validity of the releases will be an important issue in the case and cannot be ignored.  (*See* Doc. 130)  Given the nature of this issue, Plaintiffs cannot satisfy the typicality or adequacy requirements under Rule 23(a), and their Motion must, thus, be denied.

## B.      Rule 23(b)(3); "Predominance" And "Superiority"

In addition to fulfilling the requirements of 23(a) (which Plaintiffs have not), to obtain a 23(b)(3) certification order, Plaintiffs also must show for each asserted claim and each proposed class that: (i) issues common to the class "predominate" over issues unique to individual class members; and (ii) the proposed class action is "superior" to the other methods available for adjudicating the controversy.[11] Neither of these requirements is satisfied in this case, as discussed below.

### 1.      Plaintiffs Fail to Establish Predominance For Any Count

The predominance requirement is "far more demanding" than the commonality requirement, as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication *by representation*."[12]  *Amchem Prods.,* 521 U.S. at 623-24, 117 S. Ct. at 2249-50.  The predominance test requires the court to

---

[10] This sort of deep and embedded conflict may not be remedied by the notice and opt out provisions of Rule 23(b)(3).  *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.,* 247 F.R.D. 156, 177-78 (C.D. Cal. 2007).

[11] *See Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 466 (S.D. Cal. 2007).

[12] Plaintiffs have deployed the phrase "pattern or practice" in hopes that it will prove predominance.  (Doc. 151-2 at 10-15)  It does not.  First, Plaintiffs have misappropriated the phrase "pattern or practice" from its natural habitat, namely Title VII class action litigation.  Second, federal courts squarely reject the notion that alleging a common course of conduct satisfies the "far more demanding" predominance requirement.  *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008).

examine the proof required for each cause of action.  *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006).  Furthermore, any unique affirmative defenses necessitating individualized inquiry serve to preclude a predominance finding.  *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007).  Plaintiffs have not shown predominance with respect to any of their claims.

### a.    Plaintiffs' Claims for "Off-the-Clock" Overtime

The crux of Plaintiffs' OTC overtime allegations is that Defendants allegedly "forced" Plaintiffs to underreport their overtime in the time entry system, resulting in their being underpaid.  (*See* Doc. 151-2 at 5-11)  Regardless of the truth of these allegations, individual issues predominate as to the class, and the claims may not be adjudicated on a representative basis.  For purposes of economy, we respectfully refer the Court to Defendants' FLSA Opening Brief (Doc. 147), as the predominance inquiry under Rule 23(b)(3) is analogous to the "Tier 2" analysis under the FLSA presented there.[13]   However, Defendants emphasize and/or make these further points.

### (1)    The Record In This Case – Including Plaintiffs' Own Submissions and Testimony – Shows That Substantial Individual Inquiry Is Required

Plaintiffs argue that PeopleSoft time entry records were inaccurate and sales managers were to blame.  (Doc. 151-2 at 9)  This argument, however, wholly

---

[13] *Compare Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705, at **5-6 (N.D. Cal. 2008) (denying FLSA certification where "resolution of plaintiffs' claims would require individualized determinations") and *Koike v. Starbucks Corp.*, Case No. 3:06-CV-3215, Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Class Certification, at 16 (N.D. Cal. 2008) (similarly denying certification under Rule 23 where "significant individual fact determinations would be required" to prove liability).

-13-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; CASE NO. SACV07-342 CJC (MLGx)

misses the point.  First, to the extent time entry records were inaccurate (such as when a loan officer underreported time), that could be for any number of *legitimate* reasons and those reasons would have to be investigated in each case.  *See Baas v. Dollar Tree Stores, Inc.*, 2008 WL 5273724, at *2 (N.D. Cal. 2008).  Likewise, there could be many legitimate and/or personal reasons that a loan officer intentionally underreported time, reasons that cannot be swept away by a certification order.

Moreover, Defendants do not concede the time entry records were always inaccurate.  To the contrary, the uncontradicted analysis by Defendants' expert indicated that, with an hour for lunch, the time entry data generally was *consistent* with telephone log-on data, undermining Plaintiffs' argument.  (*See* Doc. 147 at 9, 16-17)  In any event, even if the time entry records were "inaccurate," what then? Plaintiffs still have no common proof and still cannot establish predominance, because proving liability and damages will require individualized inquiry.  *See*, *e.g.*, *Koike v. Starbucks Corp.*, Case No. 3:06-cv-3215, Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Class Certification, at 15-20 (N.D. Cal. 2008) ("Koike Order") (denying certification for lack of predominance).  In *Koike*, as in this case, plaintiffs had no contemporaneous record of alleged OTC work and thus could not offer common proof of liability.  Koike Order at 15.  Faced, like here, with plaintiffs' failure to offer common proof of alleged lost overtime,[14] the court in *Koike* denied certification under Rule 23, finding that "significant individual fact determinations

---

[14]  Koike Order at 15 (the "propositions Koike attempts to establish would not prove that a single…manager worked off the clock.").

1   would be required" to prove liability.  Koike Order at 16; *see also Castle*, 2008

2   WL 495705, at **5-6.

3       The same result is warranted here.  Having rejected the time entry records as

4   purportedly unreliable, Plaintiffs have no contemporaneous record of alleged OTC

5   overtime worked and instead rely upon anecdotal evidence from individual

6   witnesses.  Class treatment cannot eliminate Defendants' right to cross examine

7   each of Plaintiffs' witnesses and any other person seeking compensation, and to

8   counter their testimony with any relevant evidence from sales managers or other

9   team members.  *Jimenez*, 238 F.R.D. 241, 253 (emphasizing defendant's right to

10  cross examine class members and lack of predominance due to individual damages

11  questions).   The resulting bees' nest of mini-trials over the fact and extent of OTC

12  work is exactly why certification was denied in *Koike*.  Koike Order at 19-20; *see*

13  *also Smith v. T-Mobile USA, Inc*., 2007 WL 2385131, at *8 (C.D. Cal. 2007)

14  (denying certification under FLSA under similar circumstances); *Basco v. Wal-*

15  *Mart Stores, Inc.*, 216 F. Supp. 2d 592, 603 (E.D. La. 2002).

16      Indeed, the eleven new declarations Plaintiffs filed with their opening brief

17  illustrate the individualized issues that are necessarily interposed in this case by

18  Plaintiffs' reliance upon anecdotal evidence rather than true common proof.

19  Despite repeating the same general allegations of being discouraged from reporting

20  overtime (*see, e.g.,* Gronsky Decl. ¶ 12 (Doc. 153-5)), the overtime actually

21  reported by these declarants – ranging from none to sporadic to 75% of pay periods

22  worked (and in between) – typifies the widespread factual variation endemic to this

23  case, which precludes 23(b)(3) certification.  *See supra* at 8.  *See Wells Fargo*,

24  2008 WL 495705, at *5 (denying certification in OTC case where declarants were

-15-

25

allegedly required to work unpaid overtime under different circumstances).  These disparities illustrate the types of individual inquiries that would be required (*e.g.,* Why did the declarant choose to report overtime at the times he or she did?  Did the declarant ask for approval from his/her sales manager?  Why did some declarants report more overtime in some years and less in others?  What evidence do these individuals have of the alleged overtime they chose not to report? And so on).  Problems of this nature are inherent in Plaintiffs' approach to this case, which essentially seeks the Court's approval to extrapolate individual claims on a class-wide basis without any factual basis for doing so.   There simply is no feasible and fair representational means of proving a class-wide OTC claim on this record.

### (2)   Plaintiffs' Allegations on Production Goals Do Not Establish Predominance

Plaintiffs' claim that production targets forced loan officers to work overtime cannot satisfy the predominance requirement.  (Doc. 151-2 at 5-7)  Even if true (which Plaintiffs themselves admit it is not in all cases; *see* Doc. 147 at 19:4-13), this assertion does not prove that a single loan officer – let alone the class – worked and was not paid for overtime hours.  *See* Koike Order at 15-16 (N.D. Cal. 2008).   Furthermore, even if such business pressures existed, adjudicating class members' claims still would require an individualized determination of the extent to which certain members felt such pressures and how they and their sales managers reacted to them.  A common, class-wide experience cannot be presumed based upon the named Plaintiffs' supposed circumstances and their testimony regarding their particular sales teams.  *Id*.; *see also Wells Fargo*, 2008 WL 495705, at **2, 4 (certification denied despite allegations that employees were pressured to

work overtime to meet sales goals).

### (3)  The Cases Cited by Plaintiffs are Inapposite

Plaintiffs cite some cases arising in very different legal and factual settings where certification was granted.  They are of no moment.  Plaintiffs' cited cases are principally "donning and doffing" or misclassification cases and thus fundamentally distinguishable.[15]  Unlike Plaintiffs' cited authorities, *this* case involves a situation whereby: (i) loan officers recorded their own work time and were not restricted by a schedule; (ii) time recorded could include all time worked (unlike preshift preparation or "donning and doffing" time); and (iii) loan officers were undisputedly classified as non-exempt during the relevant period (and were, in fact, paid overtime).  The record here does not satisfy Rule 23 and Plaintiffs' reliance on inapposite and distinct cases does not change this result.  Certification should be denied.

### b.  Plaintiffs' Claims for Allegedly Missed Meal Breaks

### (1)  The Only Common Proof Available Shows Loan Officers Took Meal Breaks

Plaintiffs' meal break claims, alleging that Defendants failed to provide meal breaks under Cal. Labor Code §§ 226.7 and 512,  lack any offering of class-wide proof that could be used to prove the claims *en masse*.  (See Doc. 151-2 at 21-22)  Indeed, the only potential common proof of meal breaks available is the PeopleSoft time entry data, and that data shows that *loan officers reported meal breaks in 98% of meal eligible shifts*.  (Expert Report ¶ 16; App. at 164)  *See also*

---

[15]  *See* Doc. 151-2 at 22-23, *citing, e.g., Garcia v. Tyson Foods, Inc.*, 2009 WL 352603 (D. Kan. 2009) (donning and doffing); *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730 (S.D.N.Y. 2006) (misclassification); and *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870 (N.D. Iowa 2008) (donning and doffing).

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008) (plaintiffs failed to show predominance where theory "did not apply class wide").  Plaintiffs cannot claim as common proof that which time entry records *do not* reveal.

Furthermore, although significant recent cases interpreting California meal break law effectively foreclose certification of these claims as a matter of law, *see infra* at 19-21, the Court need not rely upon those cases here, because 23(b)(3) certification is unavailing where the evidence is as factually varied, as it is here. Whatever the view of California law, meal break violations cannot occur in those instances in which a class member actually *took or waived* a meal break, *whether or not it was recorded.  See Goldsby v. Adecco, Inc.*, 2009 WL 262216, at *4 (N.D. Cal. 2009).  Here, for example, named Plaintiff Karalis testified that he went out for lunch 75% of the time and thus took a meal break 75% of the time (Karalis 70:5-11; App. at 108), while named Plaintiff Schueler testified that, although she sometimes worked through lunch, no one ever told her to do this and she knew she could have taken a break if she had wanted one.  She admitted that she simply "chose" not to take a meal break on some days.  (Schueler 188:24-190:24, 192:14-25; App. II at 28-29)

So when and how frequently did putative class members allegedly not take a meal break, *yet record that they did*, and therefore go underpaid, in violation of the Labor Code?[16]  There is no common proof which could even possibly hope to answer this question for the class.  Plaintiffs merely offer each of their personal

---

[16] A putative class member must have recorded a meal break to even begin to have a claim.  Those who did not record a meal break would have been paid for that time.

-18-

recollections of events from years earlier, with no contemporaneous documentation of those alleged events.   (*See, e.g.*, Karalis 66:21-68:6; App. at 107)  That fails as appropriate *class-wide* evidence of the *fact* of alleged missed meal breaks, much less the purported *reason* they were missed, thus defeating predominance. *Forrand v. Federal Express Corp.*, 2009 WL 648966, at *3 (C.D. Cal. 2009); *Adecco*, 2009 WL 262216, at *4 (plaintiff "fails to identify… how she would propose to establish liability on a class-wide basis").

### (2)   Recent Case Law Underscores that Individual Issues Predominate on the Meal Break Claim

Moreover, Plaintiffs ignore the recent federal and state decisions holding "[t]he word 'provide' means merely to 'supply or make available'" – not ensure – for purposes of the Labor Code. *Kimoto v. McDonald's Corps.,* 2008 WL 4690536 (C.D. Cal. 2008); *Supercuts*, 252 F.R.D. 641; *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1087, 1089 (N.D. Cal. 2007).[17]   While decisions like these seriously weaken the legal underpinnings of Plaintiffs' meal break claim, the larger point under Rule 23 is that Plaintiffs were *not* forced to forego meal breaks in violation of the Labor Code, as the record shows.  As discussed above, Melissa Schueler testified that she knew she could take meal breaks and did, and simply

---

[17] *Brinker Rest. Corp. v. Superior Court,* 80 Cal. Rptr. 3d 781, 2008 WL 2806613 (Cal. Ct. App. July 22, 2008), *pet'n for review granted by* 196 P.3d 216, 85 Cal. Rptr. 3d 688 (2008); *accord*:  *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008); *Bradley v. Networkers Int'l LLC*, Not Reported in Cal. Rptr. 3d, 2009 WL 265531 (Cal. App. 2009).   Contrary cases Plaintiffs cite are distinguishable.  In *Espinoza v. Domino's Pizza, LLC*, No. EDVJ 07-1601-VAP (C.D. Cal. Feb. 18, 2009), there was no meal break policy included in the employee handbook. *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 575-77 (C.D. Cal. 2008), involved a claim that the class was not provided a second meal break after working more than a 10 hour day. *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 605-06 (E.D. Cal. 2008) is a misclassification case.

"chose" not to on occasion.  (Schueler 188:24-190:24, 192:14-25; App. II at 28-29)
Plaintiff Figueroa testified that his manager did not forbid him from taking a meal
break, but that his manager "suggested" he work through lunch to fund more loans.
(Figueroa 144:17-25; App. II at 32)   Plaintiff Karalis testified that he was not
forced to forego meal breaks – he decided to work through lunch at the end of the
month so that he could close his loans; his sales manager never told him not to take
a lunch (Karalis 95:12-23; App. II at 36); and he never told his manager that he did
not want to work through lunch. (*Id.* 106:14-18; App. II at 37)

   Plaintiffs' meal break claims are deficient as a matter of law, but
certification should be denied for lack of predominance without reaching that
ultimate question. *See, e.g., Brown v. Federal Express Corp.*, 249 F.R.D. 580,
586 (C.D. Cal. 2008) (proof that plaintiffs were "deprived" of meal breaks would
require "substantial individualized fact finding"); *Forrand*, 2009 WL 648966, at *3
(analysis required to determine reasons for missed meal breaks defeats
predominance); *Adecco,* 2009 WL 262216, at *4.

   Plaintiffs try to resuscitate their meal break certification request by claiming
that Defendants' policy required loan officers to record a meal break, whether they
took one or not.  (Doc. 151-2 at 11)   The argument is counterfactual.   First,
Plaintiffs misstate the policy, which requires loan officers to record time accurately
and entitles them to a meal break.  (*See* App. at 118, Doc. 148; Doc 147 at 8)
Second, the testimony by Plaintiffs described *supra* at 19-20 belies the notion that
any such policy against meal breaks was in place.  Other testimony also contradicts
Plaintiffs' claim: opt-in Plaintiff Vaillancourt testified that his sales manager did
not tell him to record a lunch break if he had not taken it (Vaillancourt 70:5-15;

-20-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION; CASE NO. SACV07-342 CJC (MLGx)

1   App. II at 41); and Karalis likewise does not recall his sales manager specifically

2   instructing him to record a lunch break. (Karalis 135:21-136:2; App. II at 38)

3        Third, Plaintiffs' argument is similar to an argument rejected in the *Forrand*

4   case, a case before this Court.   In *Forrand*, this Court found that *automatic*

5   "punching" of meal breaks by a time keeping system failed to establish "common

6   proof" of a violation:

7           Plaintiff Forrand says that METEOR would automatically insert
            an unpaid 30-minute lunch break into the mechanics' shift

8           record *whether or not a lunch break was taken*.   These time
            records, however, do not constitute a viable means of common

9           proof.   Individualized fact inquiries are necessary to determine
            which mechanics did take a lunch break in accordance with the

10          METEOR record.

11  *Forrand*, 2009 WL 648966, at *3 (denying certification) (citations omitted).

12       Plaintiffs also argue they were "too busy" to take meal breaks. (Doc. 151-2

13  at 11).   This is another non-starter, as the cases make clear.   *See, e.g., Supercuts*,

14  252 F.R.D. at 646 ("Plaintiff's next theory – that the stores were too busy to give

15  employees a meaningful opportunity to take breaks – requires an individual inquiry

16  into each store, each shift, each employee.").

17              **c.    Plaintiffs Fail Even To Address Their Wage
                        Statement, UCL and Penalty Claims**

18              **(1)    Wage Statement and UCL**

19       Plaintiffs allege no independent facts in the FAC to support their wage

20  statement claim or UCL claim, *see* FAC ¶¶ 57-59, 61-71, nor do they address these

21  claims separately in their Rule 23 brief.   Though both claims are legally derivative

22  of their overtime or meal break claims, the Court still must look at their specific

23

24

25

elements of proof, for purposes of the predominance analysis.[18]   Plaintiffs' failure even to address these claims is thus fatal to their Motion.[19]

### (2)    Waiting Time Penalties Under §203

Plaintiffs also fail to address their § 203 claim, as well, which precludes certification of such claim.  Moreover, given the legal and factual briar patch raised by such a claim, 23(b)(3) certification is not feasible in any event.  Liability can attach under § 203 only if an employer is liable for a penalty.  Whether a penalty could attach is dependent on the willfulness of an employer, the conduct of the employee, the circumstances under which the employee left employment,[20] and a raft of other necessarily individualized considerations, all of which Plaintiffs ignore.[21]   Thus, there can be no certification of any § 203 claim in this case.

---

[18]   For example, to the extent a wage statement claim is based on a missed meal break, the factual analysis required would include whether (a) the employee recorded a meal period but did not take one; (b) the practice in question occurred during the applicable limitations period; and (c) the employee actually received a statement identifying incorrect work hours.  *Blackwell*, 245 F.R.D. at 468 (denying certification of wage statement class).

[19]   Moreover, a UCL class could not be certified in this case as Proposition 64 requires that every putative class member have "suffered injury in fact" because of the alleged misconduct.  Cal. Bus. & Prof. Code § 17204, as amended by Prop. 64, § 3.

[20]   If a loan officer was discharged, wages are "due and payable immediately."  Cal. Labor Code § 202(a).  If a loan officer quits, wages are "due and payable" at the time of quitting *provided* the employee gave 72 hours' notice.  If 72 hours' prior notice is not given, wages become "due and payable not later than 72 hours thereafter."  Final payment must be tendered at the place of employment unless the employee has affirmatively requested that payment be mailed to a designated address.  If no such request has been made, the employer is not required to mail payment. *Villafuerte v. Inter-Con Security Sys., Inc.,* 96 Cal. App. 4th 45, 51, 117 Cal. Rptr. 2d 916, 920 (2002).

[21]   *See, e.g.,  Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.,* 102 Cal. App. 4th 765, 782, 125 Cal. Rptr. 2d 804 (2002) (willfulness); Labor Code § 203 ("An employee who secretes or absents himself or herself to avoid payment to him or her, or who refuses to receive the payment…." is not entitled to relief); *id.* § 202(a) (when final payment must be made).

### 2.    Plaintiffs' Failure to Establish Superiority And Other Issues under Rule 23(b)(3)

Separate from predominance (which Plaintiffs fail to show), Plaintiffs must also show that a class action is "superior" to other methods available for adjudicating the controversy.  Rule 23(b)(3).  Plaintiffs have not done this and, for this reason, too, their Motion should be denied.

### a.    Plaintiffs Can File Individual Claims

To assess superiority, Rule 23(b)(3) calls for consideration of several factors, including the availability of procedural alternatives.  Rule 23(b)(3)(A-D); *Jimenez*, 238 F.R.D. at 253-54.  Plaintiffs state a class action is superior because absent class members will not file individual claims (Doc. 151-2 at 20).  This is unsupported by anything in the record and is another deficiency in Plaintiffs' Motion.[22]  First, absent class members could bring individual claims before the California Division of Labor Standards Enforcement ("DLSE").  *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 WL 4393465, at *5 (C.D. Cal. 2006).  Second, some putative class members may have more than a "small" claim, contrary to Plaintiffs' argument.  Some loan officers earned six figure annual compensation, and some contend they worked 10-15 hours/week of unrecorded, unpaid overtime. (Doc. 147 at 7, n. 10; Schueler Decl. ¶ 13; App. at 67))  Such earners have more than a "negative value" interest in pursuing individual claims, absent a class action.

### b.    No Class-wide Damages Model

---

[22]  Plaintiffs offer a declaration from another of their attorneys to support this argument. *See* Borgen Decl. at ¶¶ 10, 13.  (Doc. 151-2 at 20) The Court should disregard and/or strike the argumentative, conclusory assertions and legal opinions in the cited "Borgen Declaration" because they contravene L.R. 7-7 and FRCP 56(e) (personal knowledge required).

-23-

1    In addition, far from proving that a class action is superior, Plaintiffs have

2 not shown that one is even viable.  While Plaintiffs baldly assert that "[t]here are

3 no unusual or particularly difficult problems in trying the case on … damage

4 issues,…" (Doc. 151-2 at 21), they propose no class-wide damage model.

5 Plaintiffs suggest that it is "premature" to identify specific case management

6 techniques, however, "expert surveys to determine damages" may be possible at

7 some point, and, in any event, "[p]otentially more individualized issues, such as

8 the varying number of overtime hours that class members may have worked, are

9 properly deferred to the damages phase of the litigation." (Doc. 151-2 at 22)

      Plaintiffs' "certify now, worry later"[23] approach fails the basic requirements

10 of Rule 23.  Plaintiffs' burden is to show *now, not later,* a manner of litigating and

11 determining class wide damages through common proof.  *Bell Atl. Corp. v. AT&T*

12 *Corp.,* 339 F.3d 294, 301-02 (5th Cir. 2003). "[A] concrete, workable formula

13 must be described before certification is granted."  *Allied Orthopedic,* 247 F.R.D.

14 at 176.[24]

15    Plaintiffs use catch phrases such as "expert surveys" and refer to other ill-

16 defined procedures.  (Doc. 151-2 at 22).  But it is impossible to tell what they mean

17 by these references.[25]  Many questions arise, among them:  What type of survey?

18 _____

19 [23] *Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 435 (Tex. 2000); Rule 23(c)(1)(A) (2003 Advisory Committee Notes).

20 [24] *See also Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 240 (C.D. Cal. 2007) (plaintiffs must account for difficulties likely in the management of the litigation as a class action).

21

22 [25] Plaintiffs mention the "employment of a Special Master."  (Doc. 151-2 at 21) For what, we do not know.  At what point in the case, they do not say.  Plaintiffs seem to have little if any regard for Defendants' Seventh Amendment right to a jury trial.  *See, e.g., Neal v. Dir., D.C. Dep't of Corps.*, 1995 WL 517246, at *4 (D.D.C. 1995) (rejecting use of special master).  Likewise, Plaintiffs offer

23

24

25

1   Who will be surveyed?   Will defendants be allowed to cross-examine survey

2   respondents?  *Jimenez*, 238 F.R.D. at 253 (emphasizing defendant's right to cross

3   examine class members and lack of predominance due to individual damages

4   questions).   How will affirmative defenses be surveyed?  Plaintiffs answer none of

5   them.   *See Valentino,* 97 F.3d at 1234 (vacating certification order where no

6   showing of how class trial could be conducted).[26]

7   ## D.   Class Definition Defects

8   Rule 23(c)(1)(B), part of the 2003 amendments to Rule 23, requires that any

9   certification order must "define the class and the class claims, issues, or …

10  defenses," *Wachtel v. Guardian Life Ins. Co.,* 453 F.3d 179, 184-86 (3d Cir. 2006).

11  Plaintiffs' proposed order and the class definition therein fail to comport with Rule

12  23(c)(1)(B).  (Doc 151-7)  Plaintiffs simply repeat allegations from their motion

13  and brief.  Required is "a readily discernible, clear, and precise statement" of the

14  parameters defining the proposed class and claims to be certified.  *Wachtel,* 453

15  F.3d at 187.  This is missing.  Plaintiffs' Motion may be denied for this additional

16  reason alone.  *Edwards v. McCormick,* 196 F.R.D. 487, 493 (S.D. Ohio 2000).

17

18  bifurcation, without any analysis of the legal and Seventh Amendment
    complications raised.  (Doc. 151-2 at 21)  *In re Rhone Poulenc Rorer, Inc.*, 51 F.3d
19  1293, 1302-03 (7th Cir. 1995); *United Air Lines, Inc. v. Wiener,* 286 F.2d 302,
    304-05 (9th Cir. 1961).

20  [26] Plaintiffs' approach also threatens to contravene provisions under the Rules
    Enabling Act and Due Process Clause.  *Molski v. Gleich*, 318 F.3d 937, 948 (9th
21  Cir. 2003) (Rules Enabling Act); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,
    432-34, 102 S. Ct. 1148, 1155-57, 71 L. Ed. 2d 265 (1982) (Due Process).  As the
22  Supreme Court has emphasized, the Rules Enabling Act, 28 U.S.C. § 2072(b),
    forbids any construction of Rule 23 that would "abridge, enlarge or modify any
23  substantive right." *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845-46, 119 S. Ct.
    2295, 2314, 144 L. Ed. 2d 715 (1999).

24

25

**IV.     CONCLUSION**

For the reasons stated, Defendants respectfully request that the Court deny Plaintiffs' Motion (Docs. 151, 158).

DATED:  April 15, 2009.

/s/ Nicholas L. DiVita
NICHOLAS L. DIVITA
JOCELYN A. VILLANUEVA
BERKOWITZ OLIVER WILLIAMS
    SHAW & EISENBRANDT, LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri  64108
Telephone:  (816) 561-7007
Facsimile:   (816) 561-1888
E-Mail:       ndivita@bowse-law.com
                   jvillanueva@bowse-law.com

LINDA MILLER SAVITT
JEFFREY P. FUCHSMAN
BALLARD ROSENBERG GOLPER
    & SAVITT, LLP
10 Universal City Plaza, 16th Floor
Universal City, California  91608-1097
Telephone:  (818) 508-3700
Facsimile:   (818) 506-4827
E-Mail:       lsavitt@brgslaw.com
                   jfuchsman@brgslaw.com

**ATTORNEYS FOR DEFENDANTS**

-26-

1

2

## **PROOF OF SERVICE**

3        The undersigned hereby certifies that a copy of the foregoing was filed
electronically with the United States District Court for the Central District of
4    California Southern Division on this 15th day of April 2009, with notice of case
activity generated and sent electronically to:

5

6        Robert W. Thompson (SBN 106411)
         Charles S. Russell (SBN 233912)
         Callahan, McCune & Willis APLC
7        111 Fashion Lane
         Tustin, California  92780
8        robert_thompson@cmwlaw.net
         charles_russell@cmwlaw.net

9

10       Morris J. Baller (SBN 048928)
         Laura L. Ho (SBN 173179)
         James Kan (SBN 240749)
11       Goldstein, Demchak, Baller, Borgen & Dardarian
         300 Lakeside Drive, Suite 1000
12       Oakland, California  94612
         mballer@gdblegal.com
13       lho@gdblegal.com
         jkan@gdblegal.com

14

15       Claudia C. Bohorquez (SBN 150647)
         Law Offices of Claudia C. Bohorquez
         3500 W. Olive Avenue, Suite 300
16       Burbank, California  91505
         ccblaw@aol.com

17   **Attorneys for Plaintiff, Melissa Schueler, et al.**

18                    BERKOWITZ OLIVER WILLIAMS
                      SHAW & EISENBRANDT LLP
19
                      By: /s/ Nicholas L. DiVita
20                    _____

21

22

23

24

25