**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MELISSA SCHUELER ET AL. <br>     Plaintiffs, <br>   vs. <br><br> H&R BLOCK MORTGAGE CORPORATION ET AL. <br>     Defendants. | Case No.: SACV 07-00342-CJC(MLGx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DECERTIFY CONDITIONAL FLSA CLASS AND DENYING PLAINTIFFS' MOTION FOR RULE 23 CLASS CERTIFICATION** |

## I.  INTRODUCTION

Plaintiffs Melissa Schueler, Chris Karalis, and Eddie Figueroa (collectively "Plaintiffs") filed this putative class and collective action on behalf of themselves and mortgage loan officers ("Loan Officers") employed by H&R Block Mortgage Corporation and/or Option One Mortgage Corporation (collectively "Defendants") in the

State of California from 2003 through 2007. Plaintiffs brought claims under the federal Fair Labor Standards Act ("FLSA"), California Labor Code §§ 226, 510, 512, and 1198, and California Business and Professions Code § 17200. Plaintiffs allege that Defendants had a policy and practice of permitting Loan Officers to work off-the-clock overtime without proper compensation and failed to provide statutorily required meal periods and itemized wage statements. Plaintiffs also seek the imposition of class-wide "waiting time" penalties under § 203 of the California Labor Code. On December 26, 2007, Plaintiffs filed a motion for conditional certification of the FLSA claims. The Court granted "Tier I" certification on January 24, 2008.

Before the Court are Defendants' motion to decertify Plaintiffs' conditional FLSA class pursuant to 29 U.S.C. § 216(b) and Plaintiffs' motion to certify a class as to their California state law claims pursuant to Federal Rule of Civil Procedure 23(b)(3). After considering the voluminous submissions and arguments of the parties, the Court finds that a Section 216(b) collective action is not appropriate in this case. Accordingly, Defendants' motion to decertify the conditional FLSA class is GRANTED. And because Plaintiffs have failed to meet their burden under Rule 23, Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is DENIED.[1]

## II.    FACTUAL BACKGROUND

Defendants operated a mortgage loan business at various locations nationally, including in the state of California. (First Amended Complaint ("Compl.") ¶¶ 10-11.) Plaintiffs are former Loan Officers who were employed by Defendants in California. (*Id.* ¶¶ 6-9.) Defendants had 13 office locations throughout California and more than 700

---

[1] Defendants' motion to strike the Declaration of David Breshears is DENIED AS MOOT.

Loan Officers working at those offices from March 2003 to September 2007. (Villanueva Decl. (3/2/09) ¶ 3.) Loan Officers were organized into teams, and each team was supervised by a Sales Manager, who oversaw the day-to-day business of his team. (Fox Decl. ¶ 5.)

Loan Officers were essentially sales people, offering loan products to prospective borrowers. (Fox Decl. ¶ 4.) If the prospective borrower wanted to proceed, the Loan Officer initiated paperwork and worked with appraisers, loan processors, and underwriters to close the loan. (Lorts Depo. 60:18-61:12; 63:11-23.) Loan Officers were subject to minimum production goals that called for them to close a certain number of loans per quarter, which varied over time. (Fox Decl. ¶ 12.)

Loan Officers were divided into two groups: CRG (customer retention group) and CAG (customer acquisition group). Each group fielded calls from different types of customers and was subject to different production targets. (Fox Decl. ¶ 4.) CRG Loan Officers typically had higher production goals than CAG Loan Officers. And CRG Loan Officers worked with borrowers who already had done business with Defendants or their affiliates, while CAG Loan Officers worked with new customers. (*Id.*)

Opt-in Plaintiffs in this case worked in 11 different offices under 55 different Sales Managers. (Villanueva Decl. (5/13/09) ¶ 4.) Loan Officers also had their "choice of schedule." (Sathoff Depo. 65:13-22.) They set their own work hours. (Johner Depo. 57:5-9.) They could and did attend to personal matters while at the office. (Karalis Depo. 69:19-22; Schueler Depo. 133:17-134:6.) A variety of factors affected how much time it took each Loan Officer to meet production targets, including the quality of his or her Sales Manager and loan processor (Lorts Depo. 68:19-69:1); changing market conditions (Vaillancourt Depo. 93:14-23); the individual Loan Officer's time management skills (Schueler Depo. 162:12-19); the nature of the customer (*id.* 98:18-

99:5); and the Loan Officer's personality (Lorts Depo. 74:2-15). Indeed, there were "multiple variables to the last minute" that would affect the amount of time required to meet production goals. (Karalis Depo. 68:23-69:16.) Given the nature of the Loan Officer's position, the daily experiences of each Loan Officer varied—as opt-in Plaintiff Badorek testified, "no two days are ever the same." (Badorek Depo. 63:20-64:2.)

Loan Officers were classified as "non-exempt" for FLSA purposes, and were eligible for overtime pay. (Fox Decl. ¶ 11.) Loan Officers were paid commissions based on loan production and an hourly wage. (*Id.*; Lorts Depo. 27:5-8.) Between 2004 and 2007, a number of Loan Officers earned annual incomes in excess of $100,000, and some made over $200,000 per year. (Figueroa Depo. 172:16-18, 173:2-20; Agnell Depo. 46:22-47:7.)

Under Defendants' written policies, Loan Officers were required to record their time worked accurately. (Fox Decl. ¶ 11.) Defendants' "Time Reporting and Attendance Tracking Policy" stated:

> The Company is required by law to keep accurate records of the actual hours worked for our associates. *You are therefore responsible for accurately reporting your time in Peoplesoft.*
>
> If you are a non-exempt associate, *you must enter all time worked into Peoplesoft* on a daily basis, including punching in and out each day for your lunch period. All hours to be paid must be entered in the appropriate field….
>
> *If you have questions about time reporting or attendance tracking, please talk to your Team Leader, Manager, or contact our Payroll department.*

> Failure to accurately report your time will subject you to disciplinary action, up to and including termination of employment.

(Karalis Depo. Ex. 5 at P581 (emphases added).)  Defendants' policy also required Loan Officers to be paid for actual hours worked.  (Fox. Decl. ¶ 11.)  Defendants' "Overtime Policy" stated:

> If you are eligible for the payment of overtime, *you will be paid for actual hours worked*.  Time off, such as vacation, sick time and holiday time, will not apply toward the calculation of overtime payments.
>
> You will be paid for all hours worked in accordance with State and Federal requirements.  *You should record your time worked in Peoplesoft*….
>
> When the need arises to work overtime, the Company will endeavor to give you as much advance notice as possible.  If you need to work overtime you must get approval in advance from your Team Leader or Manager.  If you are non-exempt and you work unauthorized overtime, you will be subject to disciplinary action, up to and including termination of employment.

(Karalis Depo. Ex. 5 at P580 (emphasis added).)

Defendants trained Loan Officers on the use of the "PeopleSoft" time entry system during orientation.  (Lorts Depo. 20:2-12.)  After electronically recording their time in the PeopleSoft system, Loan Officers submitted their time records to their Sales Managers.  (Fox Decl. ¶ 11; Sathoff Depo. 47:24-48:10.)  Sales Managers reviewed and approved the time records, then sent the records to the Payroll Department for processing and issuance of paychecks.  (*Id.*)  Sixty-three percent of Loan Officers recorded and were paid for

overtime at some point during the relevant time period. (Ward Decl. ¶ 9.) From March 23, 2003 onward, Defendants paid over $502,000 in overtime wages to California-based Loan Officers. (Fox Decl. ¶ 14). Sales Managers, Human Resources personnel, and Payroll personnel were available for questions about payroll issues or other policies. (Sathoff Depo. 63:7-64:6; Karalis Depo. Ex. 5 at P581.) Defendants also had a telephone hotline through which Loan Officers could anonymously report any work issues or complaints. (Karalis Depo. Ex. 6 at P158.)

Under Defendants' written policies, Loan Officers were entitled to meal periods. (Fox Decl. ¶ 11.) Defendants' "Lunch and Break Periods Policy" stated:

> If your position is non-exempt, you are entitled to two 15-minute breaks per day, one in the morning and one in the afternoon. You are also entitled to a lunch period of 30 minutes to one (1) hour. Your breaks may not be combined or added to your lunch period.
>
> Lunch and break periods are scheduled by your Team Leader or Manager and must be taken by you.

(Karalis Depo. Ex. 5 at P580.) Loan Officers reported meal breaks in the time entry system in 98% of the meal-eligible shifts during the relevant period. (Ward Decl. ¶ 16.)

Despite these written policies, Plaintiffs allege that Defendants had a policy and practice of permitting Loan Officers to work off-the-clock overtime without proper compensation and failed to provide statutorily required meal periods and itemized wage statements. Based on these allegations, Plaintiffs seek relief under the federal Fair Labor Standards Act ("FLSA"), California Labor Code §§ 226, 510, 512, and 1198, and California Business and Professions Code § 17200. Plaintiffs seek to vindicate their

rights collectively and as a class. However, because determining liability for Defendants' allegedly unlawful conduct must be resolved on an individualized basis, this case cannot proceed as either a collective or class action.

### III. DEFENDANTS' MOTION TO DECERTIFY CONDITIONAL FLSA CLASS

The FLSA provides that "no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "[A]ny one or more employees for and in behalf of himself or themselves and other employees similarly situated" may bring an action for, among other things, unpaid overtime compensation, against an employer who violates the FLSA. *Id*. § 216(b). Employees wishing to join the suit must "opt-in" by filing a written consent with the court. *Id.* The court may authorize named plaintiffs in an FLSA action to send notice to all potential plaintiffs to "opt-in" to the suit. *Smith v. T-Mobile USA, Inc.*, Case No. 05-5274 ABC (SSx), 2007 WL 2385131, at *2 (C.D. Cal. Aug. 15, 2007).

District courts have discretion to determine whether certification of a § 216(b) collective action is appropriate. *Id.* at *2. To determine whether certification is appropriate, the district court employs a two-tiered approach. At the early Tier I stage, the court determines "based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." *Id.* at *3. The "more rigorous" Tier II analysis is designed to determine—with the benefit of a more fully developed record—whether a collective action is appropriate and feasible. *Id.* at *7. It is no longer sufficient that plaintiffs' evidence merely "successfully engage" the competing evidence offered by the defendant. Rather, plaintiffs bear the burden of proving that collective action treatment is appropriate. *Pfohl v. Farmers Ins. Group,* Case

No. CV-03-3080 DT (RCx), 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004). In determining whether plaintiffs have met their Tier II burden, the court weighs various factors to determine whether plaintiffs are similarly situated, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Id.* In particular, recent federal cases from California considering FLSA certification have found that certification is not warranted in the absence of proof that plaintiffs' alleged injuries resulted from a unified policy. *Smith*, 2007 WL 2385131, at *8; *Castle v. Wells Fargo Fin., Inc.*, Case No. C-06-4347 SI, 2008 WL 495705, at *5 (N.D. Cal. Feb. 20, 2008). In this case, decertification is appropriate because each of the Tier II factors militates against certification, and Plaintiffs have failed to demonstrate that their alleged injuries resulted from a unified policy.

First, Plaintiffs' worked in different employment settings, and their claims involve disparate facts. The opt-in Plaintiffs in this case worked at 11 different offices, under 55 different Sales Managers, and during different time periods. (Villanueva Decl. (5/13/09) ¶ 4.) The expert evidence presented by Defendants confirms there was statistically significant variation in the reporting of overtime across offices and Sales Managers. (Ward Decl. ¶¶ 13-15.) *See also Hinojos v. Home Depot, Inc.*, Case No. 06-00108, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006) (variation in incidence of overtime supports denial of conditional certification). Defendants' expert analyzed overtime actually recorded by Loan Officers and concluded that his statistical test "strongly rejected the hypothesis that the incidence of overtime was the same across locations. In each year, location differences were highly statistically significant. This result shows that there was systematic variation across locations in the incidence of overtime among [L]oan [O]fficers." (Ward Decl. ¶ 13.) Dr. Ward also concluded that there was systematic variation, not systematic uniformity, across offices and sales managers in the incidence and number of overtime hours recorded by Loan Officers. (*Id.* ¶¶ 14-15.) The record

also reveals substantial variation even within the same offices, teams, and time periods. Indeed, Plaintiffs concede that they allege Defendants "applied pressure to Loan Officers to work overtime to sell loans *through a variety of mechanisms*." (Doc. 163 at 5 (emphasis added).)

Second, the defenses in this case are varied. These defenses raise a host of individualized issues in this case, including: whether a particular Plaintiff worked overtime; whether and why a particular Plaintiff may have under-reported work time; whether Sales Managers were aware of alleged off-the-clock work; whether Plaintiffs violated Defendants' policies for accurately recording time; and whether certain Plaintiffs signed severance agreements. Each individual Plaintiff's claims would be subject to varied defenses based on that individual's time entry, payroll records, and competing fact witness testimony. For example, Defendants may argue that named Plaintiff Karalis actually over-reported his time and that named Plaintiff Schueler's credibility is undermined by the fact that she operated a personal business on the side during the relevant time period. (Karalis Depo. 119:1-13, Ex. 8; Schueler Depo. 133:17-25.) Each of these issues requires individualized factual inquiries. *See, e.g., Hinojos*, 2006 WL 3712944, at *3 (holding individualized determinations about each plaintiff's claims make collective action treatment impractical and unmanageable). Furthermore, fifty-one of the opt-in Plaintiffs apparently signed severance agreements containing a confirmation of payment of all wages owed. (Fox Decl. ¶ 8, Ex. 1.) Those agreements could provide defenses specific to those fifty-one opt-in Plaintiffs' claims.

Third, fairness and procedural consideration counsel against certification. Given the nature of the claims and defenses, class-wide proof is not available. Whether any Plaintiff worked off-the-clock overtime, how much, and why, and whether individual Sales Managers were aware of it, cannot be determined through any form of common proof identified by Plaintiffs. In particular, the evidence of liability is primarily

anecdotal, based on each individual's memory. Plaintiffs contend that this case could be presented through the vehicle of "representative testimony." Using representative proof is inappropriate in this case, however, because potential defenses in this case entitle Defendants to call witnesses to testify in response to Plaintiffs' claims. For example, where a particular Plaintiff claims to have regularly worked off-the-clock, Defendants would be entitled to call witnesses to challenge that testimony.[2] Multiple, individual trials on the merits is antithesis of a collective action. Any claims and defenses must be made, explored, and tested on an individualized basis, and proceeding collectively in this case would be unmanageable. *See Smith*, 2007 WL 2385131, at *8.

Fourth, decertification is appropriate because plaintiffs have failed to establish a unified policy resulting in Plaintiffs' alleged injuries. *Smith*, 2007 WL 2385131, at *8; *Castle*, 2008 WL 495705, at *5 (finding that "plaintiffs have not identified any company-wide policy or practice to deny overtime and thus have failed to show that the various Wells Fargo employees are similarly situated for purposes of class certification"). The record shows that if Plaintiffs were denied overtime pay, it occurred in many different ways, by many different managers, at different times, and in different offices. Different Plaintiffs describe different alleged policies and practices. Named Plaintiff Figueroa testified that his Sales Manager told him not to record overtime. (Figueroa Response to Interrogatory p. 10.) Meanwhile, named Plaintiff Karalis testified that his Sales Manager erased overtime he had previously recorded. (Karalis Depo. 101:15-18; 114:25-115:6.) Opt-in Plaintiff Badorek testified that he was not allowed to record overtime during some periods of his employment, but after a "turning point," he was permitted to do so. (Badorek Depo. 30:2-17.) Finally, named Plaintiff Schueler testified

---

[2] Defendants' inability to cross-examine the vast majority of the opt-in Plaintiffs would also be prejudicial. A collective action would not allow Defendants to meaningfully or fairly challenge Plaintiffs' claims. *See, e.g., Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 586 (E.D. La. 2008) (decertifying collective action post-trial after proceedings revealed unsuitability of trying claims and issues through representative testimony).

she recorded and was paid for 131.5 hours of overtime from August 2004 through early 2005, under Sales Manager Pat Stafford. (Schueler Depo. 64:14-21; 146:10-13; 208:25-209:6.) She stated, however, that everything changed when she got a new Sales Manager, Glen Reneau. (*Id.* 86:25-87:13.) Schueler stated Reneau told her to "come to him" before working overtime, and says that, rather than ever approaching him for pre-approval to work overtime, she stopped recording the overtime she worked. (*Id.* 196:24-197:2.) Simply put, Plaintiffs' off-the-clock overtime claims are individualized, not the result of an identifiable system-wide corporate policy, and cannot be resolved in one trial.

## IV.   PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The proponent of the class bears the burden of demonstrating that all of the requirements of Rule 23 of the Federal Rules of Civil Procedure have been satisfied and that class certification is appropriate. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Prior to certifying a class under Rule 23, the Court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996) (internal quotations omitted). First, Plaintiffs must satisfy all requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of all members of the class. FED. R. CIV. P. 23(a).

Plaintiffs also must show that they satisfy at least one of the three provisions of Rule 23(b). Here, Plaintiffs have sought certification solely under the third provision, Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). Plaintiffs bear the burden to show that common questions of fact and law predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy. *Zisner v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Any unique affirmative defenses necessitating individualized inquiry preclude a predominance finding. *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007). Inherent in the superiority requirement is the notion that the case can be tried in the form of a class action through common proof without deteriorating the substantive law rights and duties of the parties, while respecting the defendant's due process rights. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845–46 (1999).

Plaintiffs have failed to meet their burden under Rule 23(b)(3) for their claims. First, common issues do not predominate over individualized questions in Plaintiffs' overtime claim. A wide range of individual issues substantially predominates over any alleged common questions in this case. Plaintiffs have not established a unified policy that caused their injuries. Nor have Plaintiffs presented a source of class-wide proof, and proof of both liability and damages would be highly individualized. *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 249 (C.D. Cal. 2006). Furthermore, Plaintiffs rely on individualized, anecdotal evidence about their personal recollections of their personal experiences. *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 253 (C.D. Cal. 2006) (emphasizing defendant's right to cross-examine class members and lack of predominance due to individual damages questions). Finally, 166 Loan Officers in the putative state law class of 750 signed severance agreements that contained a general release and a confirmation of receipt of wages owed. *See, e.g.*, *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 441 (C.D. Cal. 2007) (individualized defenses may preclude a finding of predominance).

Common issues also do not predominate over individualized questions in Plaintiffs' meal break claim. Plaintiffs' lack common proof for this claim. The only potential class-wide proof of meal breaks presented to the Court is the PeopleSoft time entry data, which does not support Plaintiffs claims because it shows that Loan Officers reported meal breaks in 98% of meal eligible shifts. (Ward Decl. ¶ 16.) *See also Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008) (plaintiffs failed to show predominance where theory "did not apply class wide"). In addition, meal break violations cannot occur in those instances in which a putative class member actually took or waived a meal break, whether or not it was recorded. *See Goldsby v. Adecco, Inc.*, 2009 WL 262216, at *4 (N.D. Cal. Feb. 4, 2009) (denying certification of meal break claim). Thus, resolution of Plaintiffs' meal break claims requires individualized inquiry as to whether, how, when, and why any Plaintiff missed meal breaks, if any. *See, e.g., Goldsby,* 2009 WL 262216, at *5 (determination of liability would be individualized question); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008) (proof that plaintiffs were deprived of meal breaks would require "substantial individualized fact finding"); *Forrand v. Federal Express Corp.*, Case No. 08-1360 DSF (PJWx), 2009 WL 648966, at *3 (C.D. Cal. Feb. 18, 2009) (analysis required to determine reasons for missed meal breaks defeats predominance).

Second, a class action is not superior to other methods available for adjudicating this controversy because a class action would be unmanageable and other alternatives exist. Plaintiffs have not presented a manner of determining liability or damages in this case on a class-wide basis. *Cervantez v. Celestica Corp.,* 253 F.R.D. 562, 576 (C.D. Cal. 2008). Multiple sets of information would need to be analyzed to prove the element of employer "knowledge" of a given Loan Officer's alleged off-the-clock work. *See Williams v. Accredited Home Lenders, Inc.*, No. 1:05-CV-1681-TWT 2006 WL 2085312, at *4-5 (N.D. Ga. Jul. 25, 2006) (comparing multiple data sets to resolve plaintiffs' claims shows case unsuitable for collective action). Plaintiffs suggest the use of expert

surveys, "trial flights," mini-trial, or a Special Master.  However, these suggestions do not allay the Court's concerns.  Without any means to establish liability or calculate damages for the proposed class, a class action would unravel into a series of mini-trials, eliminating the very efficiencies the class action device seeks to attain.  *See Valentino*, 97 F.3d at 1234; *Hinojos*, 2006 WL 3712944 at *3 ("mini trials" and individualized determinations are antithesis of collective treatment).  Furthermore, a class action is not necessary to ensure that individuals can vindicate their rights.  Absent class members can bring individual claims before the California Division of Labor Standards Enforcement.  *Lanzarone v. Guardsmark Holdings, Inc.*, Case No. 06-1136 R-PLAx, 2006 WL 4393465, at *5 (C.D. Cal. Sept. 7, 2007).  Between 2004 and 2007, the evidence shows that Loan Officers typically earned in excess of $100,000 in annual income, and some made over $200,000 a year.  (Figueroa Depo. 172:16-18; 173:2-20; Agnell Depo. 46:25-47:7.)  If these individuals have valid claims, they have a substantial interest in litigating them.

In sum, the record demonstrates significant variation and individual questions as to whether Plaintiffs worked overtime, whether and how H&R Block failed to pay for that overtime, and most importantly, why H&R Block failed to pay for that overtime.  Likewise, Plaintiffs' meal break claim raises individual issues regarding whether Plaintiffs were deprived meal break and how and why this occurred, if at all.  These issues will have to be resolved on an individualized basis to comport with due process.[3]

---

[3] Plaintiffs also allege that Defendants have violated California Labor Code § 226(a) by "fail[ing] to furnish … timely, itemized statements," as required by law and Plaintiffs claim that "the acts and omissions of the Defendant … including violations of the FLSA and California Labor Code, constitute unlawful, unfair, deceptive and/or anti-competitive business practices," in violation of California Business and Professions Code §§ 17200 *et seq.*  (Compl. ¶¶ 58, 63.)  Plaintiffs concede that these claims are derivative of their off-the-clock overtime and meal break claims.  (Doc. 171 at 29-30.)   For the reasons discussed in connection with those claims, the Court declines to certify Plaintiffs' wage statement and unfair competition claims.  Additionally, liability for waiting time penalties under California Labor Code § 203 would—like all other claims asserted in this case—also depend on individualized factual analyses.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to decertify the conditional FLSA class is GRANTED, and Plaintiffs' motion for class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure is DENIED.  The claims of the Opt-In Plaintiffs are DISMISSED WITHOUT PREJUDICE.  Counsel are directed to confer and propose a case management order to the Court within 45 days outlining procedures for further processing or disposition of this action.

DATED: August 10, 2009

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE